IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| YOLANDA KYEREMEH, *et al.*, | : |
| Plaintiffs, | : Case No. 2:17-CV-497 |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : Magistrate Judge Jolson |
| JEFFERSON B. SESSIONS, III, *et al.*, | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before the Court on Plaintiffs Aning Kyeremeh's and Yolanda Kyeremeh's Motion for Summary Judgment. (ECF No. 11). The Government Responded. (ECF No. 14). The deadline for filing a Reply has passed, with no filing from the Plaintiffs. For the following reasons, Plaintiffs' Motion for Summary Judgement is **GRANTED** and the case is **REVERSED and REMANDED** to the United States Citizenship and Immigration Services ("USCIS").

### I. BACKGROUND

Mr. Aning Kyeremeh arrived in the United States from Ghana on March 14, 2008. He had a B-2 visa authorizing him to stay in the United States until September 13, 2008, but he remained in the United States thereafter. From 2009 to 2012, Mr. Kyeremeh had three unsuccessful marriages. On April 9, 2009, Mr. Kyeremeh married Lynsey Ann Rose, a U.S. citizen, but the marriage was annulled in December 2009. On March 4, 2010, Mr. Kyeremeh married Laketisha Henderson, also a U.S. citizen. On June 18, 2010, Ms. Henderson filed a Form I-130, Petition for Alien Relative. Ms. Henderson did not appear for the interview with USCIS in January 2011. In February 2011, the Government began removal proceedings against

1

Mr. Kyeremeh. (ECF No. 1-5 at 3). On April 6, 2011, Mr. Kyeremeh and Ms. Henderson divorced.

One month later, on May 10, 2011, Mr. Kyeremeh married again; this time to Ms. Amber Nicole Gilliam. On June 20, 2011, Ms. Gilliam filed a Form I-130 for Mr. Kyeremeh. USCIS interviewed Mr. Kyeremeh and Ms. Gilliam individually on December 20, 2011. (ECF No. 1-5 at 3).

Ms. Gilliam and Mr. Kyeremeh offered consistent answers about some details of their relationship. As the USCIS found in its decision denying Ms. Gilliam's Form I-130:

> Ms. Gilliam's testimony and [Mr. Kyeremeh's] testimony were consistent with respect to their claimed marital address: 4313 Chesford Road, Apartment 3, Columbus, Ohio; that they first met at a birthday party through an individual named Master Geboah, in January 2010; that they went on their first date in January 2011, and that they went to Applebees; that [Mr. Kyeremeh] asked Ms. Gilliam to marry him on April 15, 2011; that the beneficiary had invited Ms. Gilliam to his house for dinner, which consisted of rice stew and chicken; they were married on May 10, 2011; after the wedding they went to a Chinese restaurant, and then they went home; that Ms. Gilliam has a daughter named Takaiyuh Gilliam, who lived with the couple; that Ms. Gilliam worked as an STNA at Regency Manor, and her work schedule was typically from 2:30pm to 10:30pm, but her days varied; that [Mr. Kyeremed] was not working because his employment authorization had expired in August 2011; that neither of them had breakfast on the morning of the interview; that [Mr. Kyeremeh] met Ms. Gilliam's mother and father, and brother Maurice, at Maurice's 50th birthday party in August 2011; that [Mr. Kyeremeh] has an uncle in New Jersey; that [Mr. Kyeremeh's] parents reside in Ghana, and Ms. Gilliam has spoken to them over the telephone.

ECF No. 6-3 at 8.

But Ms. Gilliam and Mr. Kyeremeh gave differing accounts of other details of their relationship. According to Ms. Gilliam, Mr. Kyeremeh "did not know Master Geboah before the birthday party" in January 2010. (ECF No. 6-3 at 8). About two weeks after they met at the party, they talked "once or twice a day up until their first date in January 2011." (*Id.*). Mr. Kyeremeh gave her a ring when he proposed. Tracy Williams, Christian, Adam, and Abena

2

came to their wedding, and "everyone but Abena went to a Chinese restaurant after the wedding." (ECF No. 6-3 at 9). Mr. Kyeremeh had been living at the apartment on Chesford Road since March or April 2011, and she moved in with him there the day of the wedding. She says that she only moved clothes to Mr. Kyeremeh's apartment. Ms. Gilliam's daughter also lived with Ms. Gilliam and Mr. Kyeremeh. Ms. Gilliam told the interviewer that her daughter was staying with Ms. Gilliam's parents in West Virginia and had been in West Virginia since the Saturday before the interview.

According to Mr. Kyeremeh, "Master Geboah was a longtime friend from back in Ghana." (ECF No. 6-3 at 8). After he met Ms. Gilliam at the party, they did not see or speak to each other until December 2010. (*Id.*). He did not give Ms. Gilliam a ring when he proposed but bought one afterwards. (*Id.* at 9). Tracy Williams, Christian Abu, and Esther attended their wedding, and "everyone but Esther went to a Chinese restaurant after the wedding." (*Id.* at 9). When he married Ms. Gilliam, he was residing at an apartment on Atlantic Avenue, and Ms. Gilliam moved in with him there, "right after the wedding." They moved to Chesford Road in June 2011. When Ms. Gilliam moved in with Mr. Kyeremeh, "she brought clothes, her daughters' toys, and her daughter's TV." (*Id.* at 9). Mr. Kyeremeh told USCIS that Ms. Gilliam's daughter had been with them since the Friday before the interview and that they dropped her off with a babysitter in Columbus before going to the interview.

In addition to these inconsistencies, USCIS concluded that Mr. Kyeremeh and Ms. Gilliam did not live together at the Chesford Road address. On Mr. Kyeremeh's June 2011 application for an apartment at Chesford Road, he "does not indicate a marital status, and the section for 'Spouse's Name and Date of Birth' is left blank." (ECF No. 6-3 at 9). He did not list Ms. Gilliam as one of his six personal references or as his emergency contact. USCIS also

contacted the community director of the apartment complex on Chesford Road. The community director recognized Mr. Kyeremeh as living at the complex "but did not recognize the photo of Ms. Gilliam as a tenant." (ECF No. 6-3 at 9). USCIS also spoke with the landlord for the apartment where Ms. Gilliam lived before marrying Mr. Kyeremeh. "[T]he landlord . . . confirmed in February 2012 that Ms. Gilliam and her daughter were the residents of that address, and the landlord stated that she had resided there since November 2009." (*Id.*). A neighbor provided the same information.

Based on these discrepancies, USCIS sent Ms. Gilliam a Notice of Intent to Deny (NOID) the Form I-130 petition on February 28, 2012. In response to this NOID, Ms. Gilliam attempted to explain some of the inconsistencies. She said that she was mistaken that Mr. Kyeremeh had given her a ring when he proposed; that she had actually moved in with Mr. Kyeremeh at the Atlantic Avenue apartment; that she kept several of her things at her old address because she did not want to break her lease there but spent "most of the time" at the Chesford Road apartment. She stated that Mr. Kyeremeh had helped arrange for her daughter to go to West Virginia but was afraid that saying her daughter was in West Virginia "would be construed negatively by the interviewing officer." (ECF No. 6-3 at 10). Mr. Kyeremeh submitted an affidavit stating the same clarifications about their addresses and where Ms. Gilliam's daughter was during the interview.

"On March 28, 2012, USCIS denied Ms. Gilliam's Form I-130 . . . ." (*Id.*). Ms. Gilliam appealed, and the BIA affirmed the decision on November 2012. While the denial of the decision was on appeal, Mr. Kyeremeh divorced Ms. Gilliam, in July 2012.

On December 24, 2012, Mr. Kyeremeh married Yolanda Kyeremeh. Like Ms. Henderson and Ms. Gilliam, Mrs. Kyeremeh filed a Form I-130 on March 29, 2013. The USCIS

found that Mrs. Kyeremeh had "met [her] burden of proof in demonstrating the bona fide nature of [her] marriage to [Mr. Kyeremeh] by clear and convincing evidence." (ECF No. 6-3 at 13). Nevertheless, USCIS sent Mrs. Kyeremeh a NOID on June 13, 2014 because USCIS found "that there is substantive and probative evidence of Mr. Kyeremeh's attempt to obtain a benefit through a fraudulent marriage to Ms. Gilliam." (ECF No. 1-1 at 4). Mrs. Kyeremeh responded with a letter from her attorney. On October 15, 2014, USCIS denied Mrs. Kyeremeh's Form I-130 petition. Mrs. Kyeremeh appealed, and the BIA remanded with instructions for the USCIS to more fully address the evidence Mrs. Kyeremeh brought forward. USCIS issued another NOID on December 21, 2015 and a final decision on January 25, 2016. The BIA affirmed on September 12, 2016. (ECF No. 1-10 at 2).

Plaintiffs Yolanda Kyeremeh and Aning Kyeremeh filed their complaint on June 9, 2017, alleging that USCIS's decision violated the Administrative Procedure Act because the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," that the decision was "contrary to constitutional right, power, privilege, or immunity," that the Kyeremehs were denied due process, and that the decision was barred by res judicata. (ECF No. 1 at 15–16). Plaintiffs also asked for declaratory judgment "that there is not substantial and probative evidence supporting a finding that the approval of Mrs. Kyeremeh's Petition is barred" because Mr. Kyeremeh's previous marriage to Ms. Gilliam was a sham and "that USCIS acted contrary to law when it post hoc modified the statutory and regulatory basis for an already-issued denial." (ECF No. 1 at 16). Plaintiffs have also asked for attorney fees and costs under 5 U.S.C. § 504, 28 U.S.C. § 2412, 28 U.S.C. § 1920, and Fed. R. Civ. P. 54(d). (*Id.* at 17). The Plaintiffs filed the instant Motion for Summary Judgment on May 16, 2018, which is now ripe for review. Despite Plaintiffs' multiple claims in their complaint, on summary judgment they have only

5

argued the issue of whether the USCIS's decision violated the APA and whether the USCIS erred in finding substantial evidence of fraud. Thus, this Court does not address Plaintiffs' constitutional claims, res judicata arguments, or request for fees and costs.

## II. STANDARD OF REVIEW

Typically, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing an agency decision, however, the standard is different. *Alexander v. Merit Sys. Protection Bd.*, 165 F.3d 474, 480 (6th Cir. 1999) (quoting *Minnesota Dep't of Jobs and Training v. Merit Sys. Protection Bd.*, 875 F.2d 179, 182 (8th Cir. 1989)).

An agency decision can only be set aside if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (citing 5 U.S.C. § 706(2)(A)). This is a deferential standard. An agency's decision is arbitrary and capricious when

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The reviewing court looks only to the rationale articulated by the agency in its decision, but "even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Id.* (quoting *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)). In making this determination, the Court is confined to the evidence in the administrative record. *Alexander v. Merit Sys. Protection Bd.*, 165 F.3d at 480; *Qian Tian v. United States*, No. 1:15cv264, 2017

U.S. Dist. LEXIS 10746, at *3 (S.D. Ohio July 12, 2017).  The reviewing "court is not permitted to reweigh the evidence nor may a court substitute its judgment for that of the agency's judgment." *Qian Tian*, 2017 U.S. Dist. LEXIS 10746, at *4–5.

To determine whether an agency's decision was contrary to law, this Court looks to the law that applies to petitions for immediate relative visas.  A U.S. citizen may submit a Form I-130 petition on behalf of an immigrant immediate relative to have that relative be given preference status.  8 U.S.C. § 1154(b).  But, the immigrant cannot be given preference status if an immediate family member previously petitioned for or was given preference status based on "a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or . . . the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c).  As in *Bangura*, "a determination of marriage fraud made pursuant to § 204(c) must be supported by substantial and probative evidence.  Therefore, this Court must overturn any finding of marriage fraud not supported by substantial and probative evidence." *Bangura*, 434 F.3d at 502–503.

### III. ANALYSIS

#### A. Denial of Immediate Relative Visa under APA Standards

Mr. and Mrs. Kyeremeh argue that the USCIS's decision to deny Mrs. Kyeremeh's petition for immediate relative visa on behalf of Mr. Kyeremeh was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.  The Kyeremehs argue that the USCIS acted improperly by discounting the Kyeremeh's evidence with the statement that "such documents are easily fabricated."  (ECF No. 6-3 at 14; ECF No. 11-1 at 24).  The Kyeremehs also argue that the USCIS improperly shifted the burden to the Kyeremehs to show that Mr.

Kyeremeh's marriage to Ms. Gilliam was not a fraud and that the USCIS erred in finding that Mr. Kyeremeh's marriage to Ms. Gilliam was fraudulent. The Government responds that USCIS considered all the evidence and decided that the Kyeremehs' evidence was unpersuasive and that Plaintiffs are simply attempting to have this Court reweigh the evidence that USCIS considered.

First, the Kyeremehs argue that the USCIS did not adequately consider their evidence of the legitimacy of Mr. Kyeremeh's marriage to Ms. Gilliam. They argue that the USCIS erred in saying that the evidence the Kyeremehs presented was "easily fabricated" because "it should not be presumed that the petitioner's evidence is false or contrived or that any adverse inference which may be drawn applies to the sequence of events surrounding the prior marriage." *Matter of Patel*, 19 I&N Dec. 774, 784–85 (BIA 1988).

The Kyeremehs submitted several documents in an attempt to show that Mr. Kyeremeh's marriage to Ms. Gilliam was not a fraud. The Kyeremehs submitted mail from GEICO Insurance addressed to Mr. Kyeremeh and Amber Gilliam at the Chesford Road address and listing Mr. Kyeremeh as the policyholder and Ms. Gilliam as the driver; the Chesford Road lease that lists Amber Gilliam as an occupant; a "Resident Ledger" showing that Ms. Gilliam paid an application fee for an apartment in August 2011; photos of Mr. Kyeremeh and Ms. Gilliam together; more mail from GEICO; AEP and AT&T bills; information from the Franklin County Auditor's website showing that "JE Warren Properties, LLC owns several properties," including Ms. Gilliam's address from before her marriage to Mr. Kyeremeh; a vehicle damage report from June 2011, that has Mr. Kyeremeh as the driver and Ms. Gilliam as a witness; a 2011 tax return for Ms. Gilliam and Mr. Kyeremeh that was submitted as Married filing jointly; an envelope addressed to Ms. Gilliam and Mr. Kyeremeh at Chesford Road in December 2011; and mail from Weddings Are Us sent to Mr. Kyeremeh and Ms. Gilliam in May 2011, at the Atlantic Avenue

8

apartment. (ECF No. 6-3 at 11–12). USCIS has offered some explanation for why it discounted the documents, so it cannot be said that USCIS failed to consider the evidence at all. But even under arbitrary and capricious review, "the BIA must provide analysis beyond 'cursory, summary, or conclusory statements.'" *Guts v. Lynch*, 623 F. App'x 304, 306 (6th Cir. 2015) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)).[1] USCIS only stated that "the documentary evidence provided is of little probative value in refuting the conclusion that Ms. Gilliam and the beneficiary's marriage was a sham" and that "[s]uch documents are easily fabricated." (ECF No. 6-3 at 14). This explanation is conclusory and renders the USCIS's decision arbitrary and capricious. As the BIA has stated before

> because documents showing joint income tax returns and bank accounts are generally considered to be evidence supportive of a bona fide marital relationship, in the absence of an objective basis in the record for discrediting the evidence, dismissal of such evidence as indicative of a financial but not necessarily a marital commitment, as argued by the Service in the case before us, would be unwarranted.

*Matter of Patel*, 19 I&N Dec. at 785. Therefore, this case is **REMANDED** to the USCIS for additional consideration of the Kyeremeh's documentary evidence.

The Kyeremehs also argue that the USCIS improperly shifted the burden to Mrs. Kyeremeh to show that Mr. Kyeremeh's marriage to Ms. Gilliam was not a sham. The USCIS acted properly in shifting the burden to Mrs. Kyeremeh. Once "there is evidence in the record to

---

[1] Although the Sixth Circuit has discussed the inadequacy of conclusory statements mostly in the context for reviewing an agency decision for abuse of discretion rather than arbitrary and capricious review, such analysis is also relevant here. An agency abuses its discretion if it acts arbitrarily. *See, e.g.*, *Caesar v. Hartford Life & Accident Ins. Co.*, 464 F. App'x 431, 434 (6th Cir. 2012) (applying arbitrary and capricious review to discontinuance of disability benefits, an area in which the plan administrator has discretion); *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001) ("An abuse of discretion may be found in those circumstances where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements, that is to say, where the Board has acted in an arbitrary and capricious manner.").

9

indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Matter of Kahy*, 19 I&N Dec. 803, 806–07 (BIA 1988). The USCIS applied an even higher standard, requiring there to be "substantial and probative evidence" of a fraudulent marriage before shifting the burden. (ECF No. 1-5 at 2). Even requiring there to be substantial and probative evidence of marriage fraud, the USCIS properly shifted the burden to Mrs. Kyeremeh. The Kyeremehs argue that the BIA should have credited Ms. Gilliam's and Mr. Kyeremeh's affidavits more heavily than it did. That is an analysis this Court does not engage in on review of the USCIS and BIA decisions. The question for purposes of burden shifting is whether there was substantial evidence in the record, not how the USCIS should have weighed the Kyeremehs' evidence. The evidence that the USCIS pointed to—several discrepancies in testimony and doubts about whether Ms. Gilliam in fact lived with Mr. Kyeremeh—was substantial evidence that shifted the burden to Mrs. Kyeremeh.

The Kyeremehs have also argued that the USCIS erred in finding that Mr. Kyeremeh's prior marriage to Ms. Gilliam was fraudulent. Because this Court is remanding the case, it will not consider whether the USCIS erred in reaching its substantive conclusion of marriage fraud.

## IV. CONCLUSION

For the foregoing reasons, the USCIS's decision to deny Mrs. Kyeremeh's Form I-130 Petition was arbitrary and capricious. Plaintiffs Motion for Summary Judgment is **GRANTED**. This case is therefore **REVERSED and REMANDED** to the USCIS for further proceedings.

**IT IS SO ORDERED.**

                                                                                 s/Algenon L. Marbley
                                                          **UNITED STATES DISTRICT JUDGE**

**DATE: March 11, 2019**